IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAW OFFICES OF DAVID J. BERNEY, P.C., | : : : : : : : : : : | CIVIL ACTION |
| Plaintiff, | | |
| v. | | No.: 12-cv-5033 |
| THE SCHOOL DISTRICT OF PHILADELPHIA, | | |
| Defendant. | | |

**M E M O R A N D U M**

**SITARSKI, M.J.**                                                                                         **June 10, 2014**

**I.      BACKGROUND**

This case arises out of two administrative actions that were brought by the parents of children with disabilities against the School District of Philadelphia ("Defendant") pursuant to, *inter alia*, the Individuals with Disabilities Education Improvement Act, 20 U.S.C. §§ 1400, *et seq.* ("IDEA"). At all relevant times, the Law Offices of David J. Berney ("Plaintiff") represented the parents. The administrative actions were settled under the resolution processes specified in 20 U.S.C. § 1415(f)(1)(B) and 34 C.F.R. § 310.510. As part of the resolution agreement, Defendant agreed to pay the Plaintiffs "reasonable attorney's fees and costs" incurred in litigating the administrative actions. (Resolution Agreement, Compl. Exh. C, ¶ 5, ECF No. 1). The agreement directed Defendant to submit payment within sixty days of receiving a detailed invoice from Plaintiffs. (*Id.*)

Plaintiffs submitted its bill and supporting time sheets to Defendant on or about May 16, 2012. (Compl. ¶ 40, ECF No. 1). Plaintiffs' counsel wrote to Defendant on June 13, 2012, to request the status of the payment. (*Id.* ¶ 42, ECF No. 1). After additional back forth between

counsel, on or about June 28, July 5, and July 9, 2012, Defendant offered to pay less than half of Plaintiff's requested fees and costs. (*Id.* ¶ 44, ECF No. 1). As a result, Plaintiff commenced this federal action, alleging that Defendant's failure to pay reasonable attorney's fees and related costs, as agreed to in the resolution agreement, violated 20 U.S.C. § 1415(f)(1)(B),[1] and amounted to a breach of contract. The matter proceeded to arbitration, where Plaintiff prevailed. (ECF No. 13). Following the arbitration award, Defendant requested a trial de novo. (ECF No. 14). However, several days before the trial was scheduled to take place, the parties appeared for a pretrial conference and settled the case. On July 25, 2013, the District Court entered a stipulation and order resolving the attorney's fees that Defendant owed to Plaintiff for attorney time incurred in the underlying administrative actions. (ECF No. 19).

Plaintiff then filed a motion for attorney's fees and costs incurred in litigating the instant federal action pursuant to Fed. R. Civ. P. 54(d) and 20 U.S.C. § 1415(i)(3)(B) and (C). (ECF No. 23). This matter has been referred to me for disposition. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

## II.    LEGAL STANDARD

Section 1415 of the IDEA authorizes payment of attorney's fees and costs to "a prevailing party who is the parent of a child with a disability."[2] 20 U.S.C. § 1415(i)(3)(B) and (C). The Third Circuit has explained that "[t]he party seeking attorney's fees has the burden to

---

[1] 20 U.S.C. § 1415(f)(1)(B) sets forth, *inter alia*, procedures for a resolution session between the parents and the local agency, and states that any written settlement agreement that results from the resolution session is enforceable in federal district court.

[2] It is undisputed that Plaintiff is a "a prevailing party" for purposes of this motion.

prove that its request for attorney's fees is reasonable."[3] *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). The fee petitioner must provide evidence "supporting the hours worked and rates claimed." *Id.*

The calculation of the appropriate amount of attorney's fees begins with the lodestar, which is the product of "the appropriate billing rate for the parties attorneys" multiplied by "the number of hours those attorneys reasonably expended on the action." *Interfaith Comty. Org. v. Honeywell Intern., Inc.*, 426 F.3d 694, 703 (3d Cir. 2005).

### III. DISCUSSION

#### A. Hourly Rates

Plaintiff seeks fees at the following rates for the four attorneys from the Law Offices of David J. Berney, P.C., who represented them in the present action: David J. Berney ($350 per hour), Megan Mahle ($285 per hour), Vanita Kalra ($265 per hour), and John Valantassis ($175 per hour). Defendant does not contest the hourly rates for Attorney Berney, but argues that the rates of the other three attorneys should be reduced to $200, $165, and $135 per hour, respectively.

In IDEA cases, like other areas of law in which fee-shifting is authorized, a reasonable hourly rate is calculated "based on rates prevailing in the community in which the action or proceedings arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C); *see Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (explaining that, to determine a

---

[3] "[Third Circuit] case law construing what is a reasonable fee applies uniformly to all fee shifting statutes." *Goodman v. Pa. Turnpike Comm'n*, 293 F.3d 655, 677 (3d Cir. 2002) (internal quotation marks and citation omitted).

reasonable rate, court must "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation").  The party seeking fees "bears the burden of establishing by way of satisfactory evidence, in addition to [the] attorney's own affidavits, . . . that the requested hourly rates meet this standard."  *Id.*; *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 361 (3d Cir. 2001).  Pursuant to § 1415(i)(3)(F)(ii) of the IDEA, the Court shall reduce the amount of attorney's fees under this section "if the amount of the attorney's fees otherwise authorized to be awarded unreasonably exceeds [prevailing hourly rates in the community.]"

The best evidence of the reasonable rate for an attorney's time is the customary billing rate for clients, which creates a presumption of reasonableness.  *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001); *Maldonado*, 256 F.3d at 184–85.  In addition, the fee schedule established by Community Legal Services, Inc. ("CLS") "has been approvingly cited by the Third Circuit as being well developed and has been found by the Eastern District of Pennsylvania to be a fair reflection of the prevailing market rates in Philadelphia."  *Maldonado*, 256 F.3d at 187.

      **1.**     **Attorney Mahle**

Plaintiff contends that this Court should accept a rate of $285 per hour for Attorney Mahle based on the following factors: (1) Attorney Mahle has worked primarily in the area of civil legal services since she graduated from New York University School of Law in 2002; (2) the Law Offices of David J. Berney customarily bills its clients $285 to $300 per hour for Attorney Mahle's work; (3) Defendant agreed to pay fees at this rate for Attorney Mahle in a

recent IDEA settlement; (4) Defendant stipulates to a $270-per-hour rate for Attorney Wentz in this case, and Attorney Wentz has less relevant experience than Attorney Mahle; (5) three experienced civil rights/education law attorneys[4] have provided affidavits attesting that the proposed rate is well within the range of prevailing rates in the Philadelphia community for services by attorneys of reasonably comparable skill, experience, and reputation; (6) courts in this district have approved similar, and often greater, rates for attorneys with comparable experience; and (7) a 2010 National Law Journal Survey, the Updated/Adjusted Laffey Matrix, and the CLS Fee Schedule support the proposed rate for Attorney Mahle.  (Memo. of Law 78-21, ECF No. 23).

In response, Defendant argues that, although Attorney Mahle states in her affidavit that she has been practicing law since graduating from law school in 2002, she was not admitted to the Pennsylvania Bar until 2006, and was then on inactive status for an unknown number of years before being reinstated to active status in 2011.  (Resp. 9, ECF No. 24).  For these reasons, Defendant argues that the Court should not attribute more than two-to-five years of experience to her, which places her in the range of $180 to $225 per hour on the CLS Schedule.  Accordingly, Defendant claims that a reasonable rate for Attorney Mahle is the middle of that range, $200 per hour.

The Court agrees with Defendant that Attorney Mahle's affidavit lacks enough specificity for the Court to confirm that her $285-per-hour rate is reasonable.  In her affidavit, Attorney Mahle explains that she graduated from law school in 2002, and, although admitted to

---

[4] In support of Attorney Mahle's rates, Plaintiff submitted affidavits from attorneys Jennifer Clarke, Daniel Atkins, and Judith Gran.  (Mot. Exhs. C, D & E, ECF Nos. 23-3, 23-4 & 23-5).

the Pennsylvania Bar in 2006, she was inactive in Pennsylvania from 2007 to 2011, when she first worked for a legal services organization in Delaware, and then practiced in Massachusetts. (Pet. Exh. H, ECF No. 23-8).  She further explains that, since returning to Pennsylvania, she has worked with the Law Offices of David J. Berney and the Health, Education, and Legal Assistance Project. (*Id.*)  Attorney Mahle does not provide any additional details about her practice between 2002 and 2007, or what type of work she was doing in Massachusetts, other than to say generally that she has been working in the area of civil legal services "since graduation" and has litigated "hundreds of matters, including special education cases, in a variety of forums over the past 10-plus years." (*Id.*)

The Court finds that Attorney Mahle's affidavit does not make clear that she has been practicing law without interruption for the entire ten-and-a-half-year period for which she seeks credit, and does not sufficiently identify the types of law she practiced during that time.  While the Court is not persuaded by Defendant's unsupported contention that the experience Attorney Mahle accrued outside of Pennsylvania should be entirely discounted in determining a reasonable hourly rate for her work, the Court agrees that her affidavit lacks a sufficient level of specificity to support her requested rate.  The Court notes that Plaintiffs have submitted affidavits from experienced attorneys who attest that a rate of $285 per hour is reasonable for Attorney Mahle.  These affidavits similarly fail to clearly delineate the specifics of Attorney Mahle's experience since law school graduation in 2002.

For these reasons, the Court will reduce Attorney Mahle's rate to $255 per hour, the top of the CLS Schedule's range for attorneys with 6-to-10 years of experience.  *See* CLS Attorney Fees, available at: http://clsphila.org/about-cls/attorney-fees (last visited June 6, 2014).

### 2. Attorney Kalra

Plaintiff seeks a rate of $265 per hour for Attorney Kalra based on the following factors: (1) Attorney Kalra has worked primarily in the areas of civil rights and international human rights since she graduated from Yale Law School in 2006; (2) the Law Offices of David J. Berney customarily bills its clients $265 to $275 per hour for Attorney Kalra's work; (3) two experienced civil rights/education law attorneys[5] have provided affidavits attesting that the proposed rate is well within the range of prevailing rates in the Philadelphia community for services by attorneys of reasonably comparable skill, experience, and reputation; (4) courts in this district have approved similar, and often greater, rates for attorneys with comparable experience; and (5) a 2010 National Law Journal Survey and the Updated/Adjusted Laffey Matrix support the proposed rate for Attorney Kalra.  (Memo. of Law 7-21, ECF No. 23).

In response, Defendant notes that Attorney Kalra did not begin practicing law in Pennsylvania until March 2013, and was not admitted to the Pennsylvania Bar until April 19, 2013.  (Resp. 9-10, ECF No. 24).  For this reason, Defendant argues that the Court should place her at the bottom of the CLS Schedule for a first-year associate ($165 – $190).

The Court finds that Attorney Kalra's affidavit lacks enough specificity for the Court to confirm that her $265-per-hour rate is reasonable.  Attorney Kalra states in her affidavit that, since graduating from law school in 2006, she has worked "primarily in the areas of civil rights and international human rights, both domestically and abroad, performing legal research, analysis, and writing and providing legal advising."  (Mot. Exh. I, ECF No. 23-9).  She then provides several examples of the work she has done, including drafting legal documents in

---

[5] In support of Attorney Kalra's rates, Plaintiff submitted affidavits from attorneys Jennifer Clarke and Judith Gran.  (Mot. Exhs. C & E, ECF Nos. 23-3 & 23-5).

connection with an affordable housing development, drafting memoranda to a federal agency recommending regulatory and statutory changes to one of its housing development programs, and drafting memoranda on matters in foreign nations. (*Id.*) She does not, however, indicate when and for how long she worked on these matters, or make clear that she has been gaining relevant experience without interruption since 2006. Based on this affidavit, the Court cannot conclude that her requested rate is reasonable.

For these reasons, the Court will reduce Attorney Kalra's rate to $245 per hour, which places her in the middle of the CLS Schedule's range for attorneys with 6-to-10 years of experience. *See* CLS Attorney Fees, available at: http://clsphila.org/about-cls/attorney-fees (last visited June 6, 2014).

### 3. Attorney Valantassis

Plaintiff seeks a rate of $175 per hour for Attorney Valantassis based on the following factors: (1) Attorney Valantassis was admitted to the Pennsylvania Bar in October 2012, and assisted the Law Offices of David J. Berney for six months with, among other matters, its special education practice; (2) the Law Offices of David J. Berney customarily billed its clients between $175 and $185 per hour for Attorney Valantassis's work; (3) four experienced education law attorneys[6] have provided affidavits attesting that the proposed rate is well within the prevailing rate in the Philadelphia community for services by attorneys of reasonably comparable skill, experience, and reputation; (4) courts in this district have approved greater rates for paralegals; and (5) a 2010 National Law Journal Survey, the Updated/Adjusted Laffey Matrix, and the CLS

---

[6] Attorneys Jennifer Clarke, Judith Gran, Jennifer Lowman, and Maura McInerney attested that a rate of $175 per hour is reasonable for Attorney Valantassis. (Mot. Exhs. C, E, F & G, ECF Nos. 23-3, 23-5, 23-6 & 23-7).

Fee Schedule support the proposed rate for Attorney Mahle.  (Memo. of Law 78-21, ECF No. 23).

Defendant argues that Attorney Valantassis's reasonable rate is $165 per hour.  (Resp. 9, ECF No. 24).  Defendant contends that because Attorney Valantassis was admitted to the Pennsylvania Bar in October 2012, he should be placed at the bottom of the CLS Schedule's range for attorneys with less than two years of experience ($165 – $190).  (Resp. 10, ECF No. 16).

Based on the affidavits provided by the Plaintiff, and in light of the survey data, the Court finds that Plaintiff has met its burden of demonstrating that Attorney Valantassis's $175-per-hour rate is reasonable.

### B. Hours Expended

In their initial Motion, Reply, and Supplemental Reply, Plaintiff claims that counsel incurred the following hours of billable work in connection with this case:

- Attorney Berney: 116 hours
- Attorney Mahle: 33.1 hours
- Attorney Kalra: 35.3 hours
- Attorney Valantassis: 15.2 hours

Defendant objects to counsel's time sheets on the grounds that: (1) counsel spent excessive time on pleadings, discovery, and motions; and (2) Plaintiff is not entitled to full reimbursement for time spent on the state-law breach-of-contract claims.

In fashioning an award of attorney's fees, the "prevailing party is not automatically entitled to compensation for all the time its attorneys spent working on the case[.]"  *Interfaith*

*Cmty. Org.*, 426 F.3d at 711. "Hours that would not generally be billed to one's own client are not properly billed to an adversary." *Pub. Interest Research Group of N.J. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995). Thus, in reviewing a fee petition, the Court must determine "whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Interfaith Cmty. Org.*, 426 F.3d at 711 (internal quotations and citation omitted). In reviewing these charges, the Court cannot reduce an award *sua sponte*, but "only in response to specific objections made by the opposing party." *Id.*

Compensable activities include the preparation of filing the lawsuit, legal research, attorney discussions and strategy sessions, negotiations, routine activities such as making telephone calls and reading mail, and travel. *See City of Riverside v. Rivera*, 477 U.S. 561, 573 n.6 (1986). In addition, time spent drafting and litigating a fee petition is compensable. *Planned Parenthood v. Attorney General of the State of N.J.*, 297 F.3d 253, 268 (3d Cir. 2002).

        **1.**    **Excessive time**

Defendant claims that all four attorneys spent excessive time on this case.

        **a.**    **Attorney Berney**

Defendant first objects to Attorney Berney recording approximately 10 hours for preparing the federal complaint, including communications with co-counsel Mahle. Defendant claims that the 15-page Complaint should have been only 3 or 4 pages long. (Resp. 15, ECF No. 24). For this reason, Defendant asks the Court to allow no more than 4 hours of Attorney Berney's time to prepare, review, and finalize the Complaint. The Court agrees that Attorney Berney spent and excessive amount of time on this task given that the legal analysis in the

Complaint is identical to the legal analysis that Attorney Berney prepared for the complaints in *Shanea S. v. School District*, No. 12-1056, *J.J. v. School District*, No. 12-2531, and *Gwendolyn L. v. School District*, No. 12-0051. While the Court recognizes that the majority of time spent on preparing the Complaint was devoted to addressing the factual background pertinent to this matter only, the Court agrees with Defendant that some reduction is in order. Therefore, the Court will reduce Plaintiff's requested hours by 25%, or 2.5 hours. For the same reason (that the fee petition filed in this case largely mirrors the fee petitions filed in *Shanea S., J.J.,* and *Gwendolyn L.)*, the Court will also reduce by 25% the 8.3 hours that Attorney Berney spent on the Reply brief in support of the fee petition, or 2.075 hours.[7]

Defendant next argues that Attorney Berney spent an excessive amount of time preparing for and attending the arbitration hearing. Defendant asks the Court to reduce the 44 hours that Attorney Berney claims by 36 hours to 8 hours. (Resp. 16, ECF No. 24). The Court agrees that 44 hours is excessive, and, to some extent, duplicative given that Attorney Mahle billed 22.5 hours preparing and trying the matter at the arbitration hearing. This is particularly true, since Attorney Berney did not act as counsel at the arbitration hearing; he testified as a witness. Therefore, the Court will reduce Attorney Berney's 44 hours by 50%, or 22 hours.

---

[7] Defendant does not challenge as excessive the time that Plaintiff's counsel spent preparing the fee petition in this matter. In the absence of a specific objection, the Court may not decrease Plaintiff's requested amount. *See Melissa G. v. School Dist. of Philadelphia,* 2008 WL 160613, 2 (E.D. Pa.) (E.D. Pa. 2008) ("The party opposing the award of attorney's fees must identify the portion of the fee request being challenged and state the reason for his challenge; a court may not decrease attorney's fees sua sponte.") (citing *Bell v. United Princeton Properties*, 884 F.2d 713, 715, 720 (3d Cir. 1989)).

### b. Attorney Mahle

Defendant objects to Attorney Mahle spending 5.5 hours on preparing the Complaint. (*Id.*). Because, as noted above, Attorney Berney has billed approximately 10 hours on the Complaint, the Court agrees with the Defendant that this entry is to some extent duplicative and excessive. The Court will reduce the requested 5.5. hours by 50%, or 2.25 hours.

Defendant also objects to the 22.5 hours that Attorney Mahle spent preparing for the arbitration. (*Id.*). The Court finds that this is not an excessive amount of time for this task.

### c. Attorney Valantassis

Defendant objects to the 10.6 hours that Attorney Valantassis spent on a spreadsheet that compares settlement outcomes in other IDEA cases to the outcomes in the underlying administrative actions. (*Id.* at 16-17, ECF No. 24). Defendant claims that the research was irrelevant to the attorney's fees issue, that Attorney Valantassis did not testify at the arbitration hearing, and that the spreadsheet was not offered as an exhibit. For these reasons, Defendant asks the Court to exclude this entire amount from the lodestar. The Court will not exclude this time. As Plaintiff explains, Attorney Valantassis prepared this spreadsheet in support of Plaintiff's argument that counsel had obtained "excellent results" in the administrative proceedings to justify reimbursement for all attorney's fees. (Reply 6-7, ECF No. 25). The Court finds that such analysis was relevant to the fee dispute, and that the time billed for this task was not excessive.

### d. Attorney Kalra

Lastly, Defendant argues that it should not be charged for the time Attorney Kalra spent on this case. Defendant claims that Attorney Kalra spent 35.5 hours "to learn the case" because

Attorney Mahle, who tried the arbitration hearing, would be on maternity leave at the time of the trial de novo. (Resp. 17, ECF No. 24).

The Court has reviewed Attorney Kalra's time sheets and finds that most of the tasks she performed in this case were not duplicative of tasks that Attorney Mahle performed prior to taking maternity leave. For example, Attorney Kalra researched legal issues that Defendant raised in its affirmative defenses and at arbitration, and prepared a Motion to Amend Plaintiff's Complaint in response to concerns Defendant raised during the arbitration. (Mot. Exh. I, ECF No. 23-9; Reply 8, ECF No. 25). The Court identifies one time entry that appears to be duplicative, namely, 5.8 hours spent on 7/24/13 reviewing the arbitration filings and hearing transcripts. (Mot. Exh. I, ECF No. 23-9). Accordingly, the Court will deduct this 5.8 hours from the 35.5 hours Attorney Kalra spent on this case.[8]

### 2. Breach of Contract Claim

Defendant next argues that Plaintiff is not entitled to reimbursement for time spent on the state-law breach-of-contract claim. Defendant contends that, while fees are statutorily authorized for Plaintiff's IDEA claim, fees are not recoverable under state law. Defendant claims that "[a]ll the pretrial discovery taken by plaintiff[s], including interrogatories, request for production of documents and two sets of requests for admissions, was conducted to prove the state law claims for breach of contract." (Resp. 18, ECF No. 24). Accordingly, Defendant asks the Court to reduce Plaintiff's fees by fifty percent. In response, Plaintiff contends that a

---

[8] The Court recognizes that this block entry includes some other tasks, such as reviewing an email from Attorney Berney, researching Fed. R. Evid. 408, and beginning an outline of case presentation. (Mot. Exh. I, ECF No. 23-9). Because these tasks have been grouped with the tasks relating to the arbitration that this Court deems duplicative, the entire 5.8-hour entry will be disallowed.

reduction is not warranted because their federal and state law claims were inextricably intertwined.

The Court will not reduce Plaintiff's fee award by fifty percent. In support of its position, Defendant relies on special education cases in which courts have reduced fee awards based on the plaintiff's limited degree of success. (*Id.*, ECF No. 16). Unlike the plaintiffs in those cases, however, Plaintiff here did not succeed on one cause of action, but lose on the other; rather, as Plaintiff explains, its IDEA and breach-of-contract claims — both of which were premised entirely on the Defendant's breach of the fees provision in the resolution agreement — were inextricably intertwined. The Court is unconvinced by Defendant's argument that Plaintiff's counsel performed tasks in furtherance of one cause of action but not the other. Defendant has not directed the Court to any authority in support of its position that Plaintiff's statutory fee award should be cut in half because, in theory, "half" of counsel's work on the case was in furtherance of an overlapping state common-law claim.

### C. Defendant's Financial Condition

Defendant argues that the Court should reduce the lodestar by an additional 15% due to the severely distressed financial condition of the School District. The Third Circuit has not addressed this question in the context of awarding fees under the IDEA. It has, however, held, in analyzing fees under 42 U.S.C. § 1988, that while "special circumstances may be taken into account to reduce an otherwise reasonable attorney's fee award[,] . . . the losing party's financial ability to pay is not a special circumstance, whether that party is a public or private agency." *Inmates of Allegheny Ct'y Jail v. Pierce*, 716 F.2d 177, 180 (3d Cir. 1983) (internal quotation marks and citation omitted); *see also Graziano v. Harrison*, 950 F.2d 107, 114 n.13 (3d Cir.

1991) (citing *Inmates of Allegheny Ct'y Jail* for proposition that the inability of a losing party to pay the attorney's fee is not a relevant consideration); *Child Evangelism Fellowship of N.J., Inc. v. Stafford Twp. School Dist.*, No. 02-4549, 2006 U.S. Dist. LEXIS 62966, at * 87 (D.N.J. Sept. 5, 2006) (declining to reduce a fee award in § 1988 case to account for a school district's financial status because a losing party's financial ability to pay is not a special circumstance or relevant consideration in determining an award of fees).

District Courts in this Circuit have thus rejected the School District's request in IDEA cases for a reduction in an otherwise reasonable attorney's fee award based on its distressed financial condition. *See, e.g., M.M. v. School Dist. of Phila.*, No. 11-4482, 2012 U.S. Dist. LEXIS 85640 (Mar. 24, 2013) (rejecting School District's request to reduce the lodestar based on its financial condition because the Third Circuit has held that the losing party's ability to pay is not a relevant consideration in determining a fee award under § 1988); *P.D. v. School Dist. of Phila.*, No. 07-713 (E.D. Pa. Jun. 28, 2007) (Pls. Reply, Exh. C, ECF No. 27) (same); *P.N. v. Clementon Bd. of Educ.*, No. 02-1351, 2007 U.S. Dist. LEXIS 29289, at *18 (D.N.J. Apr. 19, 2007) (same).

This authority notwithstanding, Defendant maintains that "[t]he financial condition of the non-prevailing party in § 1988 cases is a factor that courts may consider when determining the amount of an award for attorney's fees." (Resp. 20, ECF No. 24). In support of this position, Defendant relies on *Alizadeh v. Safeway Stores*, 910 F.2d 234, 238 (5th Cir. 1990), and *Hughes v. Repko*, 578 F.2d 483, 488 (3d Cir. 1978). As Judge Davis explained when the School District made this argument in *M.M. v. School Dist.,* however, neither of these cases directly supports Defendant's proposition:

>Defendant cites the cases *Alizadeh v. Safeway Stores*, 910 F.2d 234 (5th Cir. 1990) and *Hughes v. Repko*, 578 F.2d 483 (3d Cir. 1978) in support of the proposition that, "[t]he financial condition of the non-prevailing party in 1988 cases is a factor that courts may consider when determining the amount of an award for attorney's fees."  Neither of the cases directly support Defendant's proposition.  In *Alizadeh*, the Fifth Circuit held that "the financial condition of a nonprevailing plaintiff charged with attorneys' fees under section 1988 is a factor that . . . a court should consider when fixing the amount of such an award."  *Alizadeh*, 910 F.2d at 239.  The Court further clarified, "Nor do we now address whether or under what circumstances a nonprevailing defendant's financial condition may be weighed in charging that party with attorneys' fees under section 1988."  *Id.* at 239 n.8.  Because the instant matter deals with a nonprevailing defendant, we do not find *Alizadeh* persuasive.  Similarly, in *Hughes v. Repko*, the Third Circuit stated, "[W]e express no opinion on whether, or in what manner, a court may take into account ability to pay in exercising its discretion to award a reasonable attorney's fee under the Act," and declined to address the issue. *Hughes*, 578 F.2d at 488.

*M.M.*, 2012 U.S. Dist. LEXIS 85640, at *22-23 (citations to record omitted).

Defendant also relies on *Barrett v. West Chester Univ.*, No. 03-4978, 2006 WL 859714 (E.D. Pa. Mar. 31, 2006) in support of its position.  In that case, West Chester University was found to have violated Title IX in terminating its women's gymnastics program.  *Id.* at *1-2.  In adjudicating the fee petition under § 1988, the court noted that West Chester University is a public university with limited funds, and that the award of attorney's fees would affect not only the taxpayers of Pennsylvania, but also the students.  *Id.* at *17-18.  Citing its responsibility to ensure that taxpayers are required to reimburse prevailing parties for only necessary fees, the court reduced plaintiff's attorney's fee award by 15% based upon the financial condition of the University.  *Id.*

The Court finds the more recent decisions in *M.M. v. School Dist.* and *P.D. v. School Dist.* more persuasive than *Barrett*.  The *Barrett* case concerned a fee application seeking fees in excess of $200,000.  The *Barrett* court wished to avoid providing a windfall to a private law

16

firm, at the expense of taxpayers and public university students. In the present case, this Court has given careful consideration to the rates to be assessed, and has carefully evaluated the Defendant's arguments concerning excessive or unnecessary time entries. Considering the totality of circumstances presented here, this Court simply cannot conclude that the possibility of a "windfall" that was present in the *Barrett* case is present here.

Although the Court is sympathetic to Defendant's financial condition, many defendants in IDEA cases are public entities facing significant budgetary concerns like Defendant here, and Congress did not include any language in the IDEA to suggest that courts should take into account such budgetary concerns when fashioning an attorney's fees award. Accordingly, the Court declines to reduce the lodestar based on Defendant's financial condition.

### D. Costs

Plaintiff seeks reimbursement for: (1) the $350 federal court filing fee (Memo. of Law 28, ECF No. 23); and (2) $270.95 incurred in copying and producing exhibits for the federal arbitration (Reply 17, ECF No. 25). Defendant does not object to the filing fee, but claims that copying costs are not compensable in the Third Circuit. (Sur-Reply 3, ECF No. 28). However, the costs of making necessary copies are recoverable under 28 U.S.C. § 1920. *See Laura P. V. Haverford School Dist.*, No. 07-5395, 2009 WL 1651286, at *9 (E.D. Pa. 2009) (explaining that copies "necessarily obtained for use in the case" are recoverable). The Court will allow the copying cost.

## VI. CONCLUSION

As set forth above, the Court calculates the attorney's fees award as follows:

| Attorney | Hours Claimed | Adjustments | Rate | Amount |
|---|---|---|---|---|
| Attorney Berney | 116 | – 22 arbitration<br><br>– 2.5 Complaint<br><br>– 2.075 Reply | $350 | $31,298.75 |
| Attorney Mahle | 33.1 | – 2.25 Complaint | $255 | $7,866.75 |
| Attorney Kalra | 35.3 | – 5.8 arbitration | $245 | $7,227.50 |
| Attorney Valantassis | 15.2 |  | $175 | $2,660 |
| **TOTAL FEES:** |  |  |  | **$49,053.00** |

The Court grants in part Plaintiff's Motion for Attorney's Fees and Costs, and awards $49,053.00 in fees and $620.95 in costs to Plaintiff.

An appropriate order follows.

BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE
